**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**vs.**                                                                    **Cr. No. 11-2293 JH**


**AGUSTIN AISPURO-HAROS,**

       **Defendant.**


**MEMORANDUM OPINION AND ORDER**

       This matter is before the Court on Defendant Agustin Aispuro-Haros' Motion for Immediate Release Pending Appeal.  [Doc. No. 105]  Defendant argues that his pretrial detention violates the Due Process Clause.  In its response [Doc. No. 115] to the Motion for Immediate Release Pending Appeal, the Government argues that pursuant to 18 U.S.C. §§ 3142 and 3143, the Defendant should not be released.  On November 29, 2012, the Court held a hearing on Defendant's Motion.  Elaine Ramirez represented the Government, and Erlinda Johnson represented Defendant, who was present.  On December 10, 2012, the Court of Appeals of the Tenth Circuit entered an order granting the Government's unopposed motion to dismiss the appeal.  However, despite dismissal of the appeal, Defendant remains in pretrial custody and therefore the arguments raised in the motion and response are not moot.  After considering the parties' pleadings and oral argument and the relevant law, the Court concludes that Defendant's Motion for Immediate Release should be denied.

## BACKGROUND

On August 3, 2011, Defendant was arrested for the offense of possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  Defendant has remained in detention from August 3, 2011, until the present—a total of about sixteen months.

After a detention and preliminary hearing on August 5, 2011, the magistrate judge found probable cause to bind Defendant over for formal charges; the magistrate judge found that Defendant was a flight risk and ordered that he be detained pending trial.  [Doc. No. 10]  On August 24, 2011, Defendant was indicted on the offense for which he had been arrested.  [Doc. No. 12]  Trial was set for October 17, 2011.  [Doc. No. 17]

Then came a series of motions and hearings, resulting in postponing the trial until November 2012.

On September 14, 2011, Defendant filed an unopposed motion to continue the trial and to extend the deadline for filing pretrial motions, because Defendant needed additional time to review discovery, conduct research, and draft pretrial motions.  [Doc. No. 18]  The Court granted Defendant's motions, extending the deadline for pretrial motions to October 20, 2011, and resetting trial for December 12, 2011.  [Doc. No. 21]  On Defendant's motions, the trial was delayed for almost two months.

On October 16, 2011, Defendant filed a motion to suppress all evidence seized from 325 Camino Cinco SW, Albuquerque.  [Doc. No. 28]  Defendant also filed a motion to compel additional discovery.  [Doc. No. 27]  After a hearing, the Court granted Defendant's motion in part on November 15, 2011, and ordered the Government to produce some of the additional

discovery requested.  [Doc. No. 38]  The Court later denied motions for reconsideration by both parties.  [Docs. No. 40, 47, 52]  The Court granted Defendant a three-week extension, until December 7, 2011, to file his reply to the Government's response to the suppression motion, to allow Defendant time to review the additional discovery.

On November 27, 2011, Defendant filed an unopposed motion to continue the December 12, 2011 trial setting, noting the need for resolution of the suppression motion—a motion which was not yet fully briefed and regarding which discovery had not yet been completed.  [Doc. No. 42]  On November 30, 2011, the Court granted Defendant's motion to continue and reset the trial for February 6, 2012.  [Doc. No. 46]  The Court also granted Defendant's request to supplement his suppression motion with three additional arguments.  [Doc. No. 43]

On January 18, 2012, the Court held an evidentiary hearing on Defendant's suppression motion and took the matter under advisement.  The Court granted the Government's request to file a supplemental response to Defendant's second supplemental brief in support of his motion to suppress.  In December 2011 and January 2012, the parties filed numerous supplemental briefs on the motion to suppress—including Defendant's two supplemental briefs and the Government's corresponding responses.  [Docs. No. 49, 54, 55, 57, 66, 69]  The Court gave the parties until February 6 to file written closing arguments on the suppression motion.  [Docs. No. 73, 74, 75]

The Government had filed an unopposed motion to continue the February 6, 2012 trial date on the ground that counsel would be in trial in another case on that date.  [Doc. No. 61] The Government also noted that Defendant's counsel would be unavailable on some dates in

February and March.  The Court granted the continuance based on the ends of justice, and reset trial for April 16, 2012.  [Doc. No. 70]

On March 27, 2012, the Government filed an unopposed motion to continue the April 16 trial date, because the suppression motion had not yet been decided.  [Doc. No. 77]  The Court granted the motion and reset trial for June 18, 2012.  [Doc. No. 78]

On June 1, 2012, Defendant filed an unopposed motion to continue the June 18 trial setting, citing the pending suppression motion.  [Doc. No. 81]  On June 6, 2012, the Court granted the motion.  [Doc. No. 83]  Based on the representations of Defendant's counsel regarding her unavailability in July and August 2012, the Court reset trial for September 24, 2012.

On August 27, 2012, the Government filed an unopposed motion to reset the September 24, 2012 trial to an earlier date.  [Doc. No. 86]  As grounds for the motion, the Government noted that the parties were in plea negotiations, that they were awaiting a ruling on the motion to suppress, and that the case agent, DEA Special Agent Scott Godier, was unavailable during the week of September 24, 2012.  On August 29, 2012, the Court denied the motion.  [Doc. No. 87] On August 30, 2012, the Government filed another unopposed motion to continue the September 24 setting, again noting the pending motion to suppress and the unavailability of Agent Godier; the Government also asserted that DEA Forensic Chemist Kiara Hamlet was unavailable to testify during the week of September 24, 2012.  [Doc. No. 88]  Thus the motion sought a continuance based on both the pendency of the suppression motion and the "ends of justice" exception.   The Court granted the Government's motion to continue and, due to the

unavailability of defense counsel and Agent Godier on certain dates in October, reset the trial for November 5, 2012.  [Doc. No. 89]

On September 26, 2012, Defendant filed a motion to dismiss on the ground that his rights under the Speedy Trial Act had been violated.  [Doc. No. 91]

On October 24, 2012, the Court filed a forty-page Memorandum Opinion and Order granting Defendant's motion to suppress.  [Doc. No. 102]

On October 26, 2012, the Government filed an opposed motion to continue the trial set for November 5, 2012, which was denied.  [Docs. No. 104, 107]  On November 2, 2012, the Government filed an amended motion to continue.  [Doc. No. 110]  In the amended motion and the telephonic status conference on November 2, 2012, the Government explained that it planned to file either a notice of appeal or a motion for reconsideration of the Court's grant of Defendant's suppression motion; since the trial setting of November 5 was within the 30 days allowed for the Government to file a notice of appeal, denial of a continuance would preclude the Government from filing a motion for reconsideration.  On November 2, 2012, the Court granted a continuance, resetting trial for the December 10, 2012 trailing calendar.  [Doc. No. 113]  The Court observed that the delay resulting from the continuance was excludable under the Speedy Trial Act, because Defendant's motion for release pending appeal was pending and not yet fully briefed.

On October 28, 2012, Defendant had filed a motion for immediate release pending appeal.  [Doc. No. 105]  The Government filed a response on November 13, 2012, and Defendant filed a reply on November 20, 2012.  [Docs. No. 115, 119]  On November 26, 2012,

the Government filed a notice of appeal from the Court's order granting the suppression motion. [Doc. No. 120]  The Court vacated the jury trial set for December 10, 2012.

On November 29, 2012, the Court held a hearing on Defendant's motion for immediate release pending appeal.

## DISCUSSION

Defendant's motion asks the Court to release him pending the Government's appeal of the order granting Defendant's motion to suppress.  That appeal has now been dismissed, though the case against Defendant remains pending and he is still in pretrial custody. Defendant has been under detention since his arrest on August 3, 2011.  The total length of detention is now sixteen months.  After reviewing the relevant law and the record, including the parties' pleadings and arguments presented at the November 29, 2012 hearing, the Court concludes that Defendant's *Motion for Immediate Release Pending Appeal* [Doc. No. 105] should be denied.

## I.  Section 3142

Defendant's motion for release is controlled by 18 U.S.C. § 3143(c), which provides that the Court shall treat Defendant according to 18 U.S.C. § 3142.   Under Section 3142(e), a defendant may be detained only if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."   For cases involving particularly serious charges, Section 3142(e) further establishes a rebuttable presumption that no conditions will be sufficient to allow release:

> (e)(3)  Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—

6

> (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .

Defendant was indicted for committing the offense of possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The statute prescribes a term of imprisonment not less than 5 years and not more than 40 years. Under Section 3142(e)(3), therefore, the rebuttable presumption in favor of detention applies in Defendant's case.

This presumption shifts the burden of production to Defendant. *See United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). "The defendant's burden of production is not heavy, but some evidence must be produced." *Id.* at 1355. The burden of persuasion regarding risk of flight and danger to the community "always remains with the government." *Id.* Even if the defendant meets his burden of production, the presumption does not disappear but instead "remains a factor for consideration by the district court in determining whether to release or detain." *Id.* In making its ultimate determination, the Court "may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989).

In determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) Defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

With regard to the first factor, there has been a finding of probable cause that Defendant committed one of the particularly serious charges for which Section 3142 establishes a rebuttable presumption in favor of detention.  The allegations are that Defendant was in possession of a large amount of methamphetamine, 445 grams, with intent to distribute.

With regard to the second factor, the weight of the evidence, the Court recognizes that it has suppressed the evidence against Defendant.  "In a detention hearing, the district court is permitted to consider the evidence sought to be suppressed as if it were admissible."  *United States v. Cos*, No. 06-2244, 198 Fed. Appx. 727, *3 (10th Cir. Oct. 4, 2006) (unpublished) (per curiam);[1] *see* 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.")  The Court finds the unpublished decision in *Cos* has persuasive value and is helpful in deciding Defendant's motion.  In Defendant's case, as in *Cos*, the district court suppressed the evidence and the Government's appeal of that ruling was pending.  Defendant was indicted for possession of 50 grams or more of methamphetamine; the evidence seized was substantially more, 445 grams.  [Docs. No. 1, 102]  As in *Cos*, it is "appropriate to downplay the significance of the suppression order by noting that the [evidence] is still available as possible evidence."  *Cos*, 198 Fed. Appx. at *3; *see also United States v. Shareef*, 907 F. Supp. 1481, 1484-85 (D. Kan. 1995) (court must apply careful scrutiny when all evidence suppressed).  While the weight of the evidence may have changed in light of the Court's suppression of the methamphetamine and other evidence, the Court may still consider this evidence in ruling on Defendant's motion for release.

---

[1] Unpublished decisions "are not precedential, but may be cited for their persuasive value."  10th Cir. R. 32.1; *see* Fed. R. App. P. 32.1.

The parties have provided little information with regard to the third factor, Defendant's history and characteristics.  The Court is aware that the Government alleges that Defendant was in the country illegally, and that there are indications from defense counsel that Defendant is a citizen of Mexico who may lack documents allowing him to be in the United States.  [Doc. No. 23, p. 16; Doc. No. 97, p. 4]  While these matters have not been definitively established, the parties do agree that there is an immigration hold on Defendant.  [Docs. No. 105, 115]  Section 3142(g)(3)(A) requires the Court to consider factors including Defendant's family ties, employment, financial resources, and community ties.  Given the lack of information the Court has on these matters, the Court finds that there is a significant risk of Defendant's flight and non-appearance.  *See United States v. Cos*, No. CR-05-1619, 2006 WL 4093034, *4 (D.N.M. May 5, 2006) (unpublished). In addition, the Court finds that Defendant has not carried his burden of producing evidence to rebut the presumption under Section 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required."  The Court finds that the Government has carried its burden of persuasion on this point.

The fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release."  At the November 29, 2012 hearing on Defendant's motion for release, Defendant presented no evidence but defense counsel asserted that Defendant had been in the community for the preceding three years without causing danger to any person or the community.  The Government asserted in its response that Defendant had entered the country illegally and that Defendant had been a danger to the prison community as a prison gang leader involved in a fight and an instigator of violence against other inmates.  [Doc. No. 115]  The Government argued in its response and at the November 29, 2012 hearing that

Defendant was a danger to the prison community, and that this implied Defendant would present a danger to the community if released. The Government made no specific showing of a danger to the community. Under Section 3142(e)(3), however, the Court must presume "that no condition or combination of conditions will reasonably assure . . . the safety of the community." Although this presumption is rebuttable, the Court finds that Defendant has not met his burden of producing evidence to rebut it. Even if the Court considers Defendant's unsubstantiated assertions about living peacefully in the community before his arrest, the presumption in favor of detention remains a factor that this Court considers in deciding whether Defendant should be released. *See Stricklin*, 932 F.2d at 1354-55.

Having considered the statutory factors, together with the presumption in favor of detention, the Court finds, by clear and convincing evidence, that there are no conditions or combination of conditions that will reasonably assure the safety of others and the community if Defendant is released. The Court also finds that there are no conditions or combination of conditions that will reasonably assure the appearance of Defendant at court proceedings as required. Under Section 3142, the Court concludes that Defendant's detention should continue.

## II.  Due Process

The United States Supreme Court concluded that "the pretrial detention contemplated by the Bail Reform Act is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *United States v. Salerno*, 481 U.S. 739, 748 (1987). "Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals," but "instead perceived pretrial detention as a potential solution to a pressing societal problem." *Id.* at 747. Pretrial detention serves important regulatory purposes, including

the prevention of flight and the protection of the community from a potentially dangerous individual. *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012) (citing *Salerno*, 481 U.S. at 747, and *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)).   But "valid pretrial detention assumes a punitive character when it is prolonged significantly." *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986); *see Salerno*, 481 U.S. at 743 n.4 ("We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal.").

Due process sets no bright-line limit on the length of permissible pretrial detention. *Briggs*, 697 F.3d at 101; *United States v. Melendez-Carrion*, 820 F.2d 56, 59 (2d Cir. 1987) (holding 24 months' expected pretrial detention did not violate due process).   The length of pretrial detention, by itself, rarely violates due process. *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (internal quotation omitted) (detention of 30 to 31 months did not violate due process).   Although there is no bright-line limit, "for every set of circumstances, due process does impose some limit." *Briggs*, 697 F.3d at 103.   "Nevertheless, no case has established an absolute outside limit." *United States v. Peters*, No. 94-2107, 28 F.3d 114, 1994 WL 325419 (10th Cir. July 7, 1994) (unpublished) (per curiam) (upholding 34-month pretrial detention against due process challenge).

In *Millan*, the Second Circuit set forth a three-factor test for analyzing pretrial detentions under the Due Process Clause. *Millan*, 4 F.3d at 1043.   The Tenth Circuit has approved of the *Millan* test. *See United States v. Cos*, No. 06-2244, 198 Fed. Appx. 727, 732 (10th Cir. Oct. 4,

2006) (unpublished); *Peters*, 1994 WL 325419, *1 (unpublished)[2]; *see United States v. Jarvis*, No. 08-2223, 299 Fed. Appx. 804, 808 (10th Cir. Nov. 13, 2008) (unpublished).

In deciding whether pretrial detention violates the Due Process Clause, the district court weighs these factors:   (1) the length of detention; (2) the extent of the Government's responsibility for delaying trial; and (3) the strength of the evidence upon which detention was based.  *Cos*, 198 Fed. Appx. at *5 (citing *Millan*, 4 F.3d at 1043-47).   Whether there is a due process violation must be decided on a case-by-case basis.  *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986); *Briggs*, 697 F.3d at 101.

## A.  Length of detention

Defendant has been detained since his arrest, a period of sixteen months.

The *Millan* Court concluded that detention expected to last thirty to thirty-one months weighed in favor of release, but did not, standing alone, demonstrate a due process violation. *Millan*, 4 F.3d at 1044.   "Length of detention will rarely by itself offend due process."  *Id.* (internal quotation omitted).   The *Millan* Court cited cases in which the Second Circuit found a due process violation for projected detentions of as little as eighteen months, and cases upholding projected detentions of thirty-two months.  *Id.* (citing *Gonzales Claudio*, 806 F.2d at 341 (2d Cir. 1986) (due process violation when total pretrial detention was expected to last 18 months); *Melendez-Carrion*, 820 F.2d at 60-61 (upholding projected pretrial detention of 34 months).  The Tenth Circuit affirmed a district court's decision that due process was not violated

---

[2] Although these are unpublished decisions from the Tenth Circuit, the Court finds that the analysis set forth and approved by the Tenth Circuit has persuasive value for the Court's resolution of Defendant's motion in the case before this Court.

by a pretrial detention already lasting thirty-four months and expected to last several more months before trial was held.  *Peters*, 1994 WL 325419, *1 (unpublished).

On remand from the Tenth Circuit, the district court in *Cos* concluded that there was no due process violation when the projected pretrial detention was nineteen months and the defendant had been detained for sixteen months at the time of the decision.  *United States v. Cos*, No. CR-05-1619, 2006 WL 4061168 (D.N.M. Nov. 15, 2006) (unpublished).  If convicted of being a felon in possession of a firearm, the defendant in *Cos* faced a likely sentence of forty-six months; the *Cos* court determined that the defendant had served approximately one third of his Guideline sentence.  *Id.* at *14.  The *Cos* court concluded that the defendant had not served such a major portion of his potential sentence that this factor, without more, supported a due process violation, and ordered continued detention.  *Id.* at *15.  The *Cos* court revisited the due process challenge when another six months had passed.  *United States v. Cos*, No. CR-05-1619, 2007 WL 1302580 (D.N.M. April 17, 2007) (unpublished).  At that time, the *Cos* court determined that the twenty-two months of pretrial detention was on the cusp of becoming a due process violation and therefore ordered release.  *Id.* at *4.

Defendant observes that the Tenth Circuit in *Theron* "expressed concern" that a four-month detention was approaching due process limits.   [Doc. No. 119, pp. 2-3]  *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986).  As the emphasized language in Defendant's reply indicates, the holding in *Theron* was not based on the Due Process Clause, but was based on the Speedy Trial Act, with the court concluding that a continuance did not toll the time under the Speedy Trial Act.  The period of time under consideration was a total projected pretrial detention of eight months, with detention continuing another two to six months during trial.  *Id.* at 1516.

13

The *Theron* court did not reach a due process issue, merely suggesting that if the court did not construe the statute to require release, continued detention "would present serious constitutional questions."   This Court acknowledges that Defendant's case raises a serious constitutional question; the Court is applying the three-factor test to consider this question.   The Court also notes critical distinctions between Defendant's case and *Theron*, which further undercut any reliance on dictum in *Theron*.   The charges in *Theron* were conspiracy and mail fraud, and the basis alleged for detention was risk of flight, not risk of danger; in addition, the presumption in favor of detention on particularly serious charges was inapplicable.  *Id.* at 1511.   The Court notes that a more recent, unpublished case from the Tenth Circuit upheld projected pretrial detention of more than thirty-six months.  *Peters*, 1994 WL 325419, *1 (unpublished) (34 months, with several more months before trial).   Under the case-by-case assessment required, the circumstances and facts of each case are critical, and comparison between cases must be performed with caution.

Defendant cites the memorandum decision by a New York district judge, *United States v. LoFranco*, 620 F. Supp. 1324   (N.D.N.Y. 1985) (unpublished), *appeal dismissed sub nom. United States v. Cheeseman*, 783 F.2d 38 (2d Cir. 1986).   The district judge's finding of a due process violation after pretrial detention of about six months was based in part on the judge's recognition that the defendant "lost the protection of the Speedy Trial Act" because his was a complex case.  *Id.* at 1326.   Another distinction from Defendant's case is that the *LoFranco* court failed to consider the presumption in favor of detention in cases involving particularly serious cases.

Defendant cites the memorandum decision by another New York district judge, *United States v. Hall*, 651 F. Supp. 13 (N.D.N.Y. 1985) (unpublished).  The district judge held in *Hall* that the defendant had rebutted the presumption of detention under Section 3142(e), and that the Government had not carried its burden of persuasion to show that defendant posed a danger to the community or a risk of flight.  *Id.* at 15-16.  The defendant in *Hall* had presented extensive evidence to rebut the presumption, including evidence that he had been living in the country legally.   The *Hall* court's conclusion that the defendant should not be detained was reached under the statute, Section 3142.  *Id.* at 16.  The judge then went on to say that his decision was "also influenced by" the potential length of detention, anticipating that this complex case involving multiple defendants would probably take many more months to come to trial, in addition to the six months the defendant had already been detained.  *Id.*  The *Hall* court's decision therefore rested primarily on the Bail Reform Act; to the extent that the court reached a due process decision, it depended on the fact that many more months would pass before trial. The Court notes that the defendant in *Hall* presented extensive evidence to rebut the presumption of detention, while Defendant Aispuro-Haros presented no evidence but only a brief assertion by defense counsel that Defendant had lived in the community for three years without causing danger.

Another district court decision cited by Defendant, *Lopez*, is also of no help to Defendant.  *United States v. Lopez*, 827 F. Supp. 1107 (D.N.J. 1993).  In *Lopez*, as in *Hall*, the decision to release the defendant after about eight months was based on the statute, Section 3142.  The defendant in *Lopez* had also presented extensive evidence of family and community ties, evidence of long-time and legal residence in the New Jersey district, and commitments from

five families to post their homes as bond to secure the defendant's release. *Id.* at 1109-10.  The

*Lopez* court concluded that the defendant had met his burden of producing evidence to rebut the

presumption of dangerousness and flight, and that the Government had not carried its burden of

persuasion. *Id.* at 1109-12.  The *Lopez* court concluded that the defendant should be released

under Section 3142. *Id.* at 1111-12.  The court then added:  "Due process concerns also drive

this decision." *Id.* at 1112.  The court observed that the Government was proceeding slowly and

failing to "devote adequate resources to prepare this case for trial." *Id.* at 1112 & n.7.  Thus the

*Lopez* holding was based on the statute, Section 3142, without a clear holding on the

constitutional issue.  And, to the extent that the court suggested a due process decision, the court

projected that pretrial detention would last long past eight months and found that the

Government was causing and would continue to cause unreasonable delay in bringing the case to

trial.

Defendant also cites the concurring opinion in *Melendez-Carrion*, 790 F.2d at 1008

(Feinberg, C.J., concurring).  The 1986 opinion in *Melendez-Carrion* is a split decision in which

the authorizing judge decided that Section 3142(e) was "unconstitutional to the extent that it

authorizes pretrial detention on grounds of danger to the community"; this view affected only the

two defendants held solely on the ground of dangerousness. *Id.* at 1004.  The concurring judge

disagreed with this view, and would have decided that the detention of more than eight months

violated due process "by inflicting punishment without an adjudication of guilt"; the concurrence

stated, however, that the eight-month detention did not violate due process to the extent

detention was for the purpose of preventing flight. *Id.* at 1005-09.  The dissent would have

upheld the Bail Reform Act's provisions allowing detention for more than eight months on risk

of danger to the community.  *Id.* at 1010-15.  Only the concurring opinion provides any support for Defendant's argument.  And all three judges in the 1986 *Melendez-Carrion* case agreed that six defendants could be detained for more than eight months on the basis of risk of flight.  The 1986 opinion in *Melendez-Carrion* case thus provides little support for Defendant, particularly in view of the later opinion in this case; in 1987, the Second Circuit held that more than nineteen months of pretrial detention (based on risk of flight) did not violate due process.  *United States v. Melendez-Carrion*, 820 F.2d 56 (2d Cir. 1987).

In addition to considering the absolute length of detention, some courts have compared the length of detention to the length of the likely sentence faced by the defendant.  *Shareef*, 907 F. Supp. at 1484; *Lofranco*, 620 F. Supp. at 1325.  The reasoning of these courts is that a defendant should not be "required to serve a major portion of the sentence to which he or she would be subject prior to a determination of guilt."  *Shareef,* 907 F. Supp. at 1484*; Lofranco*, 620 F. Supp. at 1325 ("holding a defendant without bail for longer than he would serve if tried and convicted must also violate due process"; holding 9½ month projected pretrial detention would violate due process).   In addition to applying the three-factor *Millan* test, the magistrate judge in *Shareef* determined that one defendant would be in pretrial detention for more than half of his likely sentence if convicted and that he presented only an economic danger; this defendant was released.  *Shareef*, 907 F. Supp. at 1484-85.  The judge found that two other defendants presented substantial flight risks and significant potential danger to the community; pretrial detention of these two defendants would constitute about one fourth to one third of their potential sentences.  *Id.*  The judge found that further detention of these two defendants did not violate due process.  *Id.* at 1484-86.

*Shareef* was cited by the Tenth Circuit in *Cos*, though not on this particular point.  *Cos*, 198 Fed. Appx. at 732.  Defendant has been detained for sixteen months, and faces a minimum sentence of five years and a maximum sentence of forty years.  Without attempting to calculate where Defendant's likely sentence would fall within this range, the Court observes that if the Court were to compare the length of Defendant's pretrial detention to the length of his potential sentence if convicted, the result would be closer to the two defendants not released in *Shareef*.

Review of the caselaw leads the Court to conclude that the length of pretrial detention in Defendant's case requires serious consideration of the due process issue, but weighs only slightly, if at all, in favor of release.

**B.  Delay attributable to the Government**

The second factor, whether the Government is responsible for delay in proceeding to trial, requires the Court to consider whether there has been "intentional, unwarranted delay by the prosecution."  *Briggs*, 697 F.3d at 102.  Even though that case had been slowed "by repeated motions and abundant discovery," the *Briggs* Court did not weigh this factor in favor of release because there was no "intentional, unwarranted delay" by the Government.  The *Briggs* Court thus held that the twenty-six month detention did not violate due process.

In *Millan*, the court found that the Government was responsible for pretrial delay, because it failed to advise the court of the misconduct of some investigating agents; the Second Circuit observed, however, that there was "no suggestion that this failure was intentional." *Millan*, 4 F.3d at 1045.  This failure had caused "significant delay" in bringing the case to trial, and the Second Circuit did weigh this factor in favor of release, but "to a significantly lesser extent than the district court."  *Id.*  Concluding that the total detention of more than thirty months

did not violate due process, the *Millan* Court reversed the district court's order releasing the defendant.

The importance of this factor is demonstrated by comparing related Second Circuit cases. In *Gonzales Claudio*, the Second Circuit held that significant unexplained delay by the Government added "considerable weight" to the defendants' claim that their fourteen-month detention violated due process. *Gonzales Claudio*, 806 F.2d at 341-342. In the later related case, *Melendez-Carrion*, the Second Circuit observed that additional facts developed in the record showed that the Government was not responsible for a significant portion of the detention, which had by that time increased to nineteen months; the court concluded that this factor (prosecution's responsibility for delay of trial) weighed "in favor of a finding that appellants' due process rights are not violated by their continued pretrial detention." *Melendez-Carrion*, 820 F.2d at 60. Pretrial detention had already lasted for nineteen months and was expected to last another five months; the *Melendez-Carrion* court held that this twenty-four month detention did not violate due process. *Id.* at 61-62. It was not until pretrial detention had reached more than thirty-two months, and was projected to last at least another four months, that the Second Circuit held, in the third related case, that no further detention could be tolerated under due process and ordered the release of one defendant. *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (per curiam).

As set forth at the beginning of this memorandum, there was some delay in discovery. Defendant moved for additional discovery, the Court granted Defendant's motion in part, and Defendant then moved for additional time to review the additional discovery before filing a reply on the suppression motion. Defendant supplemented his suppression motion with additional

arguments.  The parties filed numerous supplemental briefs on the motion to suppress.  Upon review of these proceedings, the Court finds that the Government was not responsible for "intentional, unwarranted delay," or that the period of any delay by the Government was significant. *See Briggs*, 697 F.3d at 102.

The Court observes that about eight and one-half months of Defendant's pretrial detention passed while the Court was deciding Defendant's suppression motion.  The evidentiary hearing on Defendant's suppression motion was held on January 18, 2012.  The parties filed their written closing arguments on February 6 and 7, 2012; since this is the date upon which the motion to suppress was fully briefed, this is the date when the motion became ripe for decision. The Court issued its order granting the motion to suppress on October 24, 2012.  Defendant argues that this delay "may not be directly attributable to the government," but "must still weigh in favor of release."  [Doc. No. 105, p. 3]  The Court concludes, however, that there was no unreasonable delay; as the Court concluded in its order denying Defendant's Speedy Trial motion, the decision on the suppression motion was as prompt as was possible under all of the circumstances.  [Doc. No. 106]  Nor was the prosecution responsible for this period of delay.

In deciding Defendant's motion under the Speedy Trial Act, the Court reviewed the record concerning the suppression motion under the totality of the circumstances.  First, the Court observed that Defendant's motion to suppress was extremely complex, requiring the Court to:  (1) examine facts that were complex, and which spanned an investigation that took place over a long period of time; (2) analyze a novel question regarding the burden of proof on an alien's standing to raise Fourth Amendment rights; (3) examine the issue, regarding which there is no authority from the Supreme Court or Tenth Circuit that is directly on point, of whether an

alien has standing to assert the Fourth Amendment right to be free from unreasonable search and seizure; (4) determine Defendant's standing to challenge the searches of two different residences; (5) conduct a detailed analysis of the search warrant affidavit and a determination of what evidence should be excised from the affidavit on the ground that it was illegally obtained; (6) conduct a *Franks* analysis of various statements in the search warrant affidavit; (7) determine whether the good faith exception applied to various allegations in the search warrant affidavit; and (8) analyze the remaining facts in the affidavit to determine whether they supported probable cause to search.  Defendant filed five lengthy briefs in support of his motion to suppress, while the Government filed four.  With the inclusion of the exhibits offered by the parties, the Court had nearly 300 pages to review.  The length and complexity of the Court's Order denying the suppression motion demonstrate the complexity and difficulty of the issue.  Second, the Court observed that disposition of the suppression motion was adversely affected by the fact that the Court was handling the litigation of a case in which the Government seeks the death penalty, *United States v. McCluskey*, Cr. No. 10-2734 JCH; that case consumes an inordinate amount of Court time and resources, while the Court is also maintaining its full caseload of civil and criminal cases.  It was more than eight months from the time the suppression motion was ripe for review[3] until the motion was decided; the Court acknowledged that this length of time was less than ideal, but concluded that the decision was as prompt as possible under all of the circumstances.  At any event, the prosecution was not responsible for the eight and one-half period during which the suppression motion was pending.

---

[3] In the Court's view, the suppression motion was not ripe for decision until February 6, 2012, the date upon which the parties filed their written closing arguments.

The Court ruled that the time Defendant's suppression motion was pending was properly excludable under 18 U.S.C. § 3161(h)(1)(D), and that there was no violation of the Speedy Trial Act. [Doc. No. 106] This ruling supports a conclusion that there was no unreasonable delay for purposes of due process protection and pretrial detention. *See Jarvis*, 299 Fed. Appx. at 807 (unpublished) ("stringent time limitations" of Speedy Trial Act limit pretrial detention so it does not become punishment in violation of due process); *Gonzales Claudio*, 806 F.2d at 340 ("[There can be no doubt that the periods of trial delay permissible under the Speedy Trial Act would extend the time of preventive detention authorized by the Bail Reform Act."). In addition, the Court concluded that in each order granting a continuance in which the Court relied on the "ends of justice" exception as an additional reason supporting its ruling, that exception served as a valid alternative ground for continuance. The Court concludes that the eight and one-half month period to decide the suppression motion was reasonable, is not attributable to the prosecution, and does not weigh in favor of Defendant's claim of a due process violation.

Upon review of the record and the relevant caselaw, the Court finds that the Government was not responsible for "intentional, unwarranted delay." Even if the Government slightly delayed the discovery process, this delay was neither significant nor intentional nor unwarranted. The Court therefore concludes that this factor weighs in favor of finding that there has been no due process violation.

## C. Strength of the evidence

The potential for a lengthy period of incarceration provides a motive to flee and therefore weighs against release. As discussed in Section I above, there are indications that Defendant is a citizen of Mexico who may lack documents allowing him to be in the United States. [Doc. No.

23, p. 16; Doc. No. 97, p. 4]  The parties agree that there is an immigration hold on Defendant. [Docs. No. 105, 115]  Given the lack of information the Court has on Defendant's family ties, employment, financial resources, and community ties, the Court finds that there is a significant risk of Defendant's flight and non-appearance.  In addition, the Court finds that Defendant has not carried his burden of producing evidence to rebut the presumption under Section 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required." *See Millan*, 4 F.3d at 1047 (considering statutory presumption of § 3142(e) under due process analysis).  The Court finds that the Government has carried its burden of persuasion on this point.

The Court also finds that Defendant's release would pose a significant risk of danger to the community.  Congress found that "drug offenders pose a special risk of flight and dangerousness to society." *Hare*, 873 F.2d at 798-99.  "In seeking to achieve the legitimate regulatory goal of preventing danger to the community, Congress was specifically concerned about the threat to the safety of the community posed by defendants charged with serious narcotics cases." *Hare*, 873 F.2d at 801.  It is not only the risk of violent behavior that is relevant; drug trafficking constitutes criminal activity that is dangerous to the community. *Millan*, 4 F.3d at 1047-48.  The Court finds that Defendant has not carried his burden of producing evidence to rebut the presumption under Section 3142(e) that "no condition or combination of conditions will reasonably assure . . . the safety of the community."  As discussed in Section I above, the Court finds that more was required of Defendant than an assertion by defense counsel, without supporting evidence, that Defendant had been in the community for the preceding three years without causing danger to any person or the

23

community.   The Court finds that the presumption of Section 3142(e) supports the Court's finding that Defendant represents a danger to the community.

Defendant argues that "the immigration hold on him decreases the likelihood of escape." [Doc. No. 105, pp. 3-4]  Defendant asserts that if released by this Court, he "would simply be transferred from U.S. Marshal custody to the custody of Immigration and Customs Enforcement (ICE)," and that his "conditions of confinement would likely not be as punitive as the conditions in which he is living at this time"; Defendant states that he has been in solitary confinement for about seven months.  [Doc. No. 105, p. 4]  At the November 29, 2012 hearing, the Government stated that it did not oppose the Court's granting Defendant's motion, based on the Government's assertion that Defendant would then be held by ICE, under the same conditions of solitary confinement, until the Government's appeal was decided by the Tenth Circuit.   Defendant disagreed that an immigration hold would be continued as long as the appeal was pending.  No evidence was presented at the hearing to confirm Defendant's immigration status or any future treatment by ICE or the length of time that Defendant would be held by ICE.

The Court concludes that it has the responsibility to decide Defendant's motion based on the applicable statutes and the relevant law.  The Court will not speculate about what ICE may or may not do.  *See Cos*, 2007 WL 1302580, *4-5.  Rather, this Court must determine, based on the totality of circumstances in this case, whether Defendant should continue to be detained at this point and whether further detention would violate due process.

## D.  Balancing of factors

The Court has balanced the length of Defendant's detention against the regulatory interests that detention is intended to achieve.  The Court concludes that the length of detention

continues to serve proper regulatory interests and is not punitive.  Although the length of Defendant's pretrial detention may weigh slightly in favor of release, the prosecution's lack of any "intentional, unwarranted delay" together with the serious risk of flight and danger to the community weigh in favor of finding that Defendant's due process rights have not been violated. The Court concludes that continuing Defendant's detention does not violate due process at this point, and denies Defendant's motion for release.

If, however, the case is not resolved early in 2013, it may become necessary to release Defendant to avoid a due process violation.  The Court invites Defendant to file a renewed motion for release on bail in early March 2013.  The Court believes that reconsideration of this issue would be appropriate at that time, because the length of pretrial detention may then be approaching the limits of what due process allows.

The Court notes that Defendant has suggested a Sixth Amendment speedy trial issue in his reply brief.  [Doc. No. 119, at 3-4]  The Court does not consider this issue, because Defendant raised it in his reply brief, thereby depriving the Government of the opportunity to respond.

**IT IS THEREFORE ORDERED** that *Defendant Agustin Aispuro-Haros' Motion for Immediate Release Pending Appeal* [Doc. No. 105] is **DENIED.**

_____
**UNITED STATES DISTRICT JUDGE**

25